The judgment of the court was pronounced by
Preston, J.
On the 12th ofMarch, 1839, the Second Municipality of New Orleans adopted a resolution which authorised the treasurer to employ such persons as he deemed proper to collect the taxes on real estate and slaves, sums due for paving banquettes, ground rents, and all monies and notes due to the corporation.
The compensation for collections of taxes on real estate and slaves was fixed at 2¿ per cent, and for all other collections at 1 per cent.
On the 11th of August, 1846, the treasurer employed the plaintiff as a collector, and placed in his hands a large amount of claims for collection.
By an ordinance adopted on the 19th of January, 1847, the council repealed tire resolution authorising the treasurer to employ persons to collect the taxes and other dues to the municipality, and provided for the election of one collector by the council. The compensation for collections of every description was fixed at 1 per cent.
*234 The plaintiff was elected collector under this ordinance, and held the office until the first Tuesday in May, when, under the ordinance, a new election took place. The plaintiff alleges that from the 11th of August until the 3d of May, he made collections on which his commissions, according to the ordinances, amounted to $3901 65, of which he admits the payment of $2097 58, leaving a balance due him of $1804 07, for which he brings suit against the municipality. Pie annexes an account of $184,408 collected by him from the 3d of February to the 1st of June, 1847, on which -he admits a commission of 1 per cent has been comptrolled and paid to him, amounting to $1844 08. "We presume, from this account and other evidence, he was qualified as the elected collector about the 3d of February, and made these collections under the ordinance of the 19th of January, 1847. The plaintiff’s claim is thus narrowed down to any balance of commissions due to him for collections made between the 11th of August, 1846, and the 3d of February, 1847, and. indeed, his counsel admits in his brief that he claims for collections from the 11th August, 1846, to the 26th of January, 1847, only. It is incumbent on him, therefore, to show the exact amount of taxes on real estate and slaves collected by him between those periods, the commissions being 2¿ por cent; and the exact amount of all other monies collected by him for the municipality, the commissions being one per cent; and deducting any commissions received by him from the aggregate, he is entitled to the balance.
Plaving been employed by the treasurer to collect, and the council having allowed commissions at the above rates for his collections, it is our opinion that he is entitled to the commissions on what he actually collected, and no more.
Sums voluntarily paid to the treasurer were not collected by him, and he is not entitled to commissions on them.' It was the duty of the treasurer to receive such sums without commission, and in consideration of his salary of $3,000 per annum, as this court in effect decided in the case of Turner and others against the Municipality.
Pie cannot claim commissions, for sum collected and paid over to the treasurer by the attornies of the municipality. For such collections the municipality allowed the attornies commissions.
The plaintiff claims commissions for large payments of ground rents collected from W. and J. Montgomery and others. There is no evidence that he collected or paid those sums to the treasurer. On the contrary, a document certified by the comptroller and treasurer of the municipality and given in evidence by the plaintiff, indicates that those large sums were paid directly into the treasury by the Montgomerys and Paulding, for the capital as well as ground rents due upon their lots. If so, the collector could not charge a commission for collecting them, nor could the treasurer charge or allow a commission for receiving them.
The receipts of the treasurer to the plaintiff for monies collected and paid into the treasury by the plaintiff, while he was employed by the treasurer, and before his election by the council, show collections made by him only to the amount of $18,140, and Mr. Breedlove, the treasurer at the time, proves that those receipts, twenty in number, show the whole amount of money collected by Mr. Thomas for taxes on real estate and slaves, and paid over to him as treasurer, during the time they are dated, that is, from the 20th of August, 1846, to the 21st of January, 1847. The commissions on this sum amount to four hundred and fifty-three dollars.
It is unnecessary to examine the bill of exceptions, for it is admitted by the parties, that the commissions now claimed by the plaintiff were allowed to Mr. Breedlove, in settlement of a suit brought by the municipality against Mr. *235 Breedlove, he or his surety guaranteeing the municipality against the claim of the plaintiff.
The account of the plaintiff should have been audited by the comptroller and paid to him, and not settled with the treasurer.
We are therefore of opinion, that the judgment of the Second District Court should be reversed, and judgment rendered in favor of the plaintiff against the defendants for $453, with interest from the judicial demand, and costs in the district court; the appellee to pay the costs of this appeal.